IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CHRYSTIE M.,[1]                                              No. 6:19-cv-00782-HZ

                         Plaintiff,                          OPINION & ORDER

            v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                         Defendant.

Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box 14490
Portland, OR 97293

            Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Chrystie M. brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits ("DIB") and supplemental security income

("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further

administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on May 4, 2015, alleging an onset date of September

23, 2013. Tr. 15, 257, 291.[2] Plaintiff's date last insured ("DLI") is December 31, 2015. Tr. 18.

Her application was denied initially and on reconsideration. Tr. 15.

      On February 14, 2018, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 15, 2591. On April 20, 2018, the ALJ found Plaintiff not

disabled. Tr. 32. The Appeals Council denied review. Tr. 1.

      Plaintiff previously applied for DIB and SSI on September 12, 2011. Tr. 15. Her

application was denied initially on September 23, 2013, and on reconsideration on February 20,

2015. *Id.* Plaintiff did not appeal the administrative decision on her first application to this Court.

*Id.*

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on fibromyalgia, depression, anxiety, Crohn's disease, chronic pain, fatigue, nausea, diarrhea, Vitamin B12 deficiency, and panic disorder. Tr. 295. At the time of her alleged onset date, she was thirty-five years old. Tr. 263. She has a high school education plus one year of college and past relevant work experience as a medical receptionist. Tr. 30, 296.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, then the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her alleged onset date through her date last insured. Tr. 18. Next, at steps two and

three, the ALJ determined that Plaintiff has the following severe impairments: "degenerative

changes of the cervical and lumbar spine, depression, anxiety, and posttraumatic stress disorder."

Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically

equal the severity of a listed impairment. Tr. 20. At step four, the ALJ concluded that Plaintiff

has the residual functional capacity to perform a limited range of light work as defined in 20

C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [S]he can lift and carry 20 pounds occasionally and 10 pounds frequently, stand
> and walk for six of eight hours, and sit for six of eight hours. However, the claimant
> can tolerate only occasional superficial interaction with the public and coworkers,
> follow only short and simple instructions, and perform only simple tasks.

Tr. 21. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 30. But at step five, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as "laboratory equipment cleaner," "production line solderer," and "electrical accessories assembler." Tr. 31. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 32.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred at step two by failing to include all Plaintiff's severe impairments, erred at step three by failing to determine that Plaintiff's impairments met or equaled the severity of a listed impairment, improperly discounted Plaintiff's subjective

symptom testimony and medical opinions at step four, and improperly found at step five that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.

I.       **Subjective Symptom Testimony**

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony because the ALJ did not provide specific, clear, and convincing reasons to reject her testimony.

The ALJ is responsible for evaluating symptom testimony. Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded on other grounds by regulation as stated in Basoff v. Saul*, 812 F. App'x 483, 485 (9th Cir. 2020) (mem.) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

The ALJ rejected Plaintiff's subjective symptom testimony because her medical records include notations of drug seeking behavior and because the "largely unremarkable" objective medical evidence did not substantiate her symptom testimony. Tr. 22–23. Both reasons are specific, clear, legitimate, and supported by substantial evidence in the record.

An ALJ may reject a claimant's testimony about the severity of their symptoms when the record demonstrates that the claimant exaggerated their symptoms to obtain pain medications. *Alexander v. Comm'r*, 373 F. App'x 741, 744 (9th Cir. 2010); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Here, the ALJ explained that he found Plaintiff's pain and mental health symptoms less severe than alleged based on several instances in which Plaintiff's medical providers noted signs of drug seeking behavior. *See* Tr. 1122 (noting several short course opioid prescriptions by various providers over the last six months and that "I am suspecting, though not certain, that there is a possibility of pain med seeking tendencies"); Tr. 1164 (Plaintiff's treating psychiatrist documenting her concerns about the factual accuracy of Plaintiff's statements about

her use of clonazepam for anxiety and her "abuse of prescribed controlled substances"); Tr. 645 (noting Plaintiff's history of narcotic pain medication abuse and that Plaintiff's mother would need to keep and dispense prescribed narcotic medications); Tr. 808 (Plaintiff presented with nausea, abdominal pain, and diarrhea; Plaintiff's mother called while Plaintiff was in the emergency department to tell the hospital that she believed Plaintiff was drug seeking because Vicodin had gone missing from their home); Tr. 815 (noting that Plaintiff was "reporting pain disproportionate to her symptoms"); Tr. 2473 (noting that Plaintiff had exhibited narcotic dependency behavior in the past and declining to prescribe Tramadol due to "fear of drug[] interaction and overdose" after Plaintiff had obtained "quite a high number" of hydrocodone, tramadol, clonazepam, and oxycodone pills in the previous month); Tr. 2493 (Plaintiff reported that she had been abusing Vicodin); Tr. 2517 ("I believe that there is a major component of drug seeking behavior. I will try to find a cause for her diarrhea, but I will not give her any more prescription[s] for narcotics."). The evidence supports the ALJ's conclusion that Plaintiff exaggerated the extent of her pain and anxiety symptoms to obtain controlled substances in the form of narcotic and anxiety medications. Thus, the ALJ properly rejected Plaintiff's testimony about the degree of her physical and mental health symptoms.

An ALJ may reject a claimant's subjective symptom testimony relating to conditions that are not medically determinable impairments. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017) ("An individual's symptoms . . . will not be found to affect the ability to perform work-related activities . . . unless the medical signs or laboratory findings show a medically determinable impairment is present."). "Signs are anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id.* The ALJ concluded that the record does not

establish that Plaintiff's alleged irritable bowel disease, Crohn's disease, and fibromyalgia are medically determinable impairments. Tr. 23. The ALJ's conclusion is supported by substantial evidence. *See* Tr. 355 (Prometheus test suggested Crohn's in the setting of three negative colonoscopies, but gastroenterologist "not entirely convinced that she has Crohn's."); Tr. 2473 (second opinion from Oregon Health Sciences University revealed no evidence to suggest Plaintiff has Crohn's); *see also* Tr. 1102 (noting that patient reported that she has a history of irritable bowel disease, Crohn's disease, and fibromyalgia).

Plaintiff pointed to no evidence in the record that demonstrates that medical signs or medically acceptable clinical diagnostic techniques established that she has irritable bowel disease, Crohn's disease, or fibromyalgia. Instead, the record demonstrates that notations about those conditions were recorded in Plaintiff's treatment records based on Plaintiff's report that she suffers from those conditions. Because Plaintiff has not met her burden to establish that those conditions are medically determinable impairments, the ALJ did not err by declining to consider the limiting effects of the symptoms related to those conditions. SSR 16-3p, 2017 WL 5180304, at *4 ("If an individual alleges symptoms, but the medical signs and laboratory findings do not substantiate any medically determinable impairment . . . we will not evaluate the individual's symptoms at step two of our two-step [subjective symptom testimony] evaluation process. We will not find an individual [is] disabled based on alleged symptoms alone."). And, even if the ALJ had erred by finding that those conditions are not medically determinable impairments, as discussed above, Plaintiff's drug seeking behavior was a legally sufficient basis to reject her symptom testimony concerning her pain and other symptoms stemming from those conditions.

///

///

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred by rejecting the opinions of Dr. Ju and Dr. Kessler that Plaintiff can understand, remember, and carry out only one- to two-step instructions and is unable to carry out more detailed instructions. Pl. Op. Br. 11. Plaintiff also argues that the ALJ improperly rejected the opinions of Dr. Boyd and Eric Davis, MSW, CSWA, QMHP. *Id.* at 13.

### A.    Dr. Ju and Dr. Kessler

Winifred Ju, M.D. and Ben Kessler, Psy.D. reviewed Plaintiff's records and determined that Plaintiff is able to "understand, remember [and] carry out short instructions (1–2 steps). [Plaintiff] is not able to understand, remember [and] carry out more detailed instructions so tasks should be broken down into simple task sequences." Tr. 123; 147. The ALJ gave significant weight to both opinions but rejected the doctors' conclusion that Plaintiff is limited to one- to two-step instructions because of the "largely unremarkable objective findings in this regard across the longitudinal period" and because Plaintiff's mental "symptoms have been kept largely under control when she has pursued treatment." Tr. 28. The ALJ also found that Plaintiff's attendance of one year of college and semiskilled work history was inconsistent with the one- to two-step instruction limitation. *Id.* The ALJ further reasoned that Plaintiff worked as a waitress briefly during the relevant period, and she did not lose that job because she was unable to meet the mental demands of the job, but because her employer fired her for being too social and friendly to customers. *Id.* (citing Tr. 2146).

Plaintiff argues that the ALJ erred because he did not provide specific and legitimate reasons to discount the opinions of Dr. Ju and Dr. Kessler, and he failed to explain how those reasons demonstrate Plaintiff's ability to complete more complex instructions. Pl. Op. Br. 12.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 632; 20 C.F.R. § 416.927. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (same); 20 C.F.R. § 416.927(c). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675; 20 C.F.R. § 416.927(c)(2)-(6).

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Ford v. Saul*, 950 F.3d 1141, 1154–55 (9th Cir. 2020). To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings or is brief or conclusory. *Bray*, 554 F.3d at 1228.

When describing the "largely unremarkable objective findings" in the records concerning Plaintiff's mental health problems, the ALJ discussed the observations that Plaintiff's treating providers made concerning her mental status, insight, judgment, eye contact, affect, and memory throughout the record. Tr. 25–27. In doing so, the ALJ also highlighted many examples of Plaintiff's own reports to her providers that her mood was fine, she was not depressed, her therapy was helping, and she had intact attention and concentration. *Id.* (citing, *e.g.*, Tr. 1867, 1951, 2224). The ALJ also observed that despite the doctors' limitation to one- to two-step instructions, Plaintiff was able to recount in detail her medical history during her hearing testimony. Tr. 25. Although the record also contains examples of Plaintiff experiencing more severe symptoms—such as when she attempted suicide in 2017 after her date last insured—the ALJ explained that Plaintiff had attributed her suicide attempt to feeling overwhelmed for the past few months, although Plaintiff alleged to have become disabled due to her depression four years earlier. Tr. 26. Because it is supported by substantial evidence, the ALJ's conclusion may not be overturned simply because the evidence is susceptible to another rational interpretation. *See Vasquez*, 572 F.3d at 591.

The ALJ also discounted Dr. Ju and Dr. Kessler's opinions because the record demonstrated that Plaintiff's mental health symptoms had been "kept largely under control" when she pursued treatment for those conditions. Tr. 28. The ALJ supported that reasoning by citing to and describing treatment notes in 2015 when Plaintiff underwent treatment with medications, psychiatry visits, and psychology visits that demonstrated that Plaintiff reported decreased irritability and anxiety, felt "much more like herself," and displayed appropriate behavior, dress, eye contact, mood, and affect. Tr. 25 (citing Tr. 1111, 2373, 2375, 2472). The ALJ thus did not fail to explain his reasons for finding that Plaintiff had a pattern of

unremarkable objective findings and that treatment largely kept her symptoms under control, and the ALJ's finding is supported by substantial evidence in the record.

Plaintiff's ability to perform semiskilled work and attendance of one year of college before her alleged onset date are not legitimate reasons to reject Dr. Ju and Dr. Kessler's opinion that Plaintiff's ability to complete tasks is limited to one- to two-step instructions. Plaintiff's ability to perform more complex tasks before the onset of her disability is of little relevance to whether Plaintiff remained able to perform similar tasks after her alleged disability. *See Von Flotow v. Berryhill*, No. SACV 17-1400-KK, 2018 WL 6427359, at *6 n.3 (C.D. Cal. Oct. 4, 2018) ("Plaintiff's ability to engage in activities before the alleged onset date is less relevant to the issue of whether she was disabled after the alleged onset date."). Because the ALJ failed to explain how Plaintiff's educational and semiskilled work history before her alleged onset date undermined Dr. Ju and Dr. Kessler's opinions that Plaintiff is limited to one- to two-step tasks since her alleged onset date, the ALJ erred.

Although Plaintiff's pre-onset semiskilled work and education were not legitimate reasons to discount Dr. Ju and Dr. Kessler's opinion that Plaintiff cannot complete tasks with more than one- to two-step instructions, the ALJ provided other legally sufficient reasons to reject that opinion. Plaintiff's ability to work as a waitress after her alleged onset date undermined Dr. Ju and Dr. Kessler's opinion that Plaintiff was unable to perform jobs that required more than one- to two-step instructions. As the ALJ explained, the evidence in the record demonstrates that Plaintiff did not lose that job because of an inability to complete tasks involving complex instructions, but because she was too social and friendly to customers. That reason was specific, legitimate, and supported by substantial evidence in the record. *See* Tr. 2146 (noting that Plaintiff told her treating psychiatrist that "my boss came out to me and said that I

was too social to customers and that is why he fired me."); Tr. 2028 ("She states she was recently fired from her job as a waitress for 'being too outgoing.'"). Plaintiff argues that "it is possible that her boss was sparing her feelings" and that her impairments were the true reason she was fired. Pl. Op. Br. 11–12. The only evidence in the record connecting her waitressing job loss to her impairments is her own testimony which, as discussed above, the ALJ properly rejected. The ALJ provided a legally sufficient reason to discount Dr. Ju and Dr. Kessler's opinion that Plaintiff's ability to remember and follow instructions is limited to one- to two-step instructions, and the ALJ's decision was supported by substantial evidence. As a result, the ALJ did not err by rejecting that opinion.

> **B.    Anna Boyd, N.D. and Eric Davis, MSW**

Plaintiff argues that the ALJ improperly weighed the opinions of Plaintiff's treating naturopathic doctor and therapist. The ALJ gave little weight to their opinions because their opinions contradicted opinions of acceptable medical sources. Additionally, the ALJ discounted Mr. Davis's opinion because Mr. Davis opined about Plaintiff's physical limitations although he was not qualified to do so as a therapist and because he included limitations relating to attention deficit/hyperactivity disorder (ADHD), which Plaintiff has not established as a medically determinable impairment. Tr. 29.

Dr. Boyd and Mr. Davis are not acceptable medical sources. 20 C.F.R. § 404.1502(a); SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006) (acceptable medical sources include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists). Only acceptable medical sources can provide medical opinions, although the ALJ must consider opinions from all medical sources. 20 C.F.R. § 404.1527(a)(2), (c), (f)(1). "The fact that a medical opinion is from an acceptable medical source is a factor that may justify

giving that opinion greater weight than an opinion from a medical source who is not an

acceptable medical source because . . . acceptable medical sources are the most qualified health

care professionals." SSR 06-03p, 2006 WL 2329939, at *5. However, depending on the facts of

the case, an opinion from a medical source who is not an acceptable medical source could

outweigh the medical opinion of an acceptable medical source:

> For example, it may be appropriate to give more weight to the opinion of a medical
> source who is not an acceptable medical source if he or she has seen the individual
> more often than the treating source, has provided better supporting evidence and a
> better explanation for the opinion, and the opinion is more consistent with the
> evidence as a whole.

20 C.F.R. § 404.1527(f)(1). An ALJ may discount the testimony of a source who is not an

acceptable medical source by providing reasons "'germane to each witness for doing so.'"

*Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r*, 613 F.3d 1217, 1227 (9th Cir. 2010)).

Plaintiff argues that (1) the ALJ erred by rejecting Dr. Boyd's and Mr. Davis's opinions

because they were inconsistent with the opinions of acceptable medical sources, (2) the ALJ

failed to explain why Mr. Davis's consideration of ADHD was a basis for discounting his

opinion, (3) the ALJ failed to explain how Mr. Davis's opinion considered Plaintiff's physical

limitations, and (4) the ALJ failed to consider Mr. Davis's remaining opinions, aside from those

concerning Plaintiff's ADHD and physical impairments, which Plaintiff argues establish

Plaintiff's disability. Pl. Op. Br. 14.

The ALJ failed to weigh Dr. Boyd and Mr. Davis's opinions using the factors in 20

C.F.R. § 404.1527(c). *See* 20 C.F.R. § 404.1527(f)(1). The ALJ also did not specify which of Dr.

Boyd and Mr. Davis's conclusions conflicted with the state agency reviewing physicians'

opinions, and evaluate the remaining, non-conflicting opinions. The Court's comparison of Dr.

Boyd and Mr. Davis's opinions with Dr. Ju and Dr. Kessler's opinions demonstrates that there

are consistencies between the opinions. For example, although the ALJ properly rejected Dr.

Kessler and Dr. Ju's opinions, all four sources agreed that Plaintiff is limited to one- to two-step instructions. Tr. 102, 147, 2584, 2586. The ALJ did not explain which opinions of Dr. Boyd and Mr. Davis were inconsistent with the state agency reviewing physicians and failed to evaluate any of their remaining opinions. As a result, the ALJ failed to provide reasons germane to Dr. Boyd and Mr. Davis for rejecting their opinions.

The ALJ also did not explain which of Mr. Davis's opinions related to Plaintiff's physical impairments and evaluate the remaining opinions in Mr. Davis's statement. Tr. 29. The ALJ also did not explain why he rejected Dr. Boyd's concurring opinion even though Dr. Boyd, as a naturopathic doctor, was qualified to make judgments about Plaintiff's physical limitations. *See Sheldon v. Colvin*, No. 2015 WL 1757812, at *13 (E.D. Wash. April 17, 2015) (finding that ALJ erred by failing to provide reasons germane to the plaintiff's treating naturopathic doctor to discount the naturopathic doctor's opinion that the plaintiff was unable to work full-time simply because it conflicted with a state agency reviewing physician's opinion). The ALJ also did not explain why she gave little weight to Dr. Boyd and Mr. Davis's remaining opinions, such as his opinions concerning "paragraph B" criteria and Plaintiff's need to take unscheduled breaks due to her mental symptoms. Tr. 29. The ALJ's failure to explain the bases for rejecting those opinions amounts to a failure to provide reasons germane to Dr. Boyd and Mr. Davis. As a result, the ALJ erred in evaluating their opinions.

## III.    Step Two Findings

Plaintiff argues that the ALJ erred at step two by failing to include Plaintiff's Crohn's disease, IBS, GERD, colitis, fibromyalgia, cervical cancer, uterine polyps, ovarian cysts, abnormal pap smears, and menorrhagia in Plaintiff's list of severe impairments. Pl. Op. Br. 14–15. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims.

*Bowen*, 482 U.S. at 153–54. The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996)).

At step two, the ALJ must consider the combined effect that all the claimant's impairments have on the claimant's ability to perform basic work activities without regard to whether each alone is sufficiently severe. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). "A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]" SSR 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985).

The ALJ determined that Plaintiff's fibromyalgia and "irritable bowel disease (or what the claimant characterized at the hearing as Crohn's disease)" were not medically determinable impairments. Tr. 18–19. The ALJ noted that the state agency medical consultants found fibromyalgia and irritable bowel disease to be among Plaintiff's medically determinable impairments, but the ALJ found that those conditions did not meet Social Security criteria for medically determinable impairments. Tr. 18. The ALJ pointed out that Plaintiff's treating gastroenterologist and another physician from whom Plaintiff sought a second opinion had concluded that Plaintiff does not have Crohn's disease. *Id.* at 19. The ALJ also observed that

Plaintiff's "gastrointestinal symptoms have been largely in remission since November 2016," which "calls into question the chronicity and thus severity of such symptoms even if the record otherwise showed a related medically determinable impairment." *Id*. The Court finds no error in the ALJ's step two analysis of Plaintiff's abdominal symptoms. The ALJ is correct that no acceptable medical source has definitively diagnosed either irritable bowel disease or Crohn's disease. The record demonstrates that Plaintiff has undergone three colonoscopies and evaluation by multiple gastroenterologists, on an inpatient and outpatient basis, and none of those workups resulted in a definitive Crohn's disease diagnosis. *See* Tr. 501 (August 2012 colonoscopy biopsy pathology report indicating no evidence of colitis or acute or chronic inflammation); Tr. 759 (October 2012 colonoscopy biopsy pathology report showing no findings of Crohn's disease); Tr. 2545 (September 2013 Prometheus TMPT Enzyme test indicating "normal activity"); Tr. 715, 787–89, 903, 1134 (May 2015 hospital report, colonoscopy report, CT abdomen and pelvis report, and pathology report noting that inpatient colonoscopy "was felt not to be consistent with Crohn's"); Tr. 2532 (June 2015 Prometheus "IBD sgi Diagnostic" test result "not consistent with" irritable bowel disease); Tr. 2473 (gastroenterologist visit indicating that Plaintiff got a second opinion from OHSU that resulted in "no evidence to suggest Crohn's."). *But see* Tr. 2554 (February 2013 Prometheus "IBD sgi Diagnostic" test indicating pattern consistent with IBD); Tr. 2482 (February 2015 chart note indicating that "Prometh[e]us [test] suggested Crohn's in a setting of three negative [colonoscopies]. . . . I am not entirely convinced that she has Crohn's.").

The ALJ's conclusion that Plaintiff's Crohn's disease or irritable bowel disease is not among Plaintiff's medically determinable impairments which are expected to last greater than twelve months is thus supported by substantial evidence in the record. The record also demonstrates that for more than a year after Plaintiff's second opinion in September 2015

indicating no evidence that she has Crohn's disease, between January 2016 and March 2017, Plaintiff reported no ongoing abdominal or gastrointestinal issues to her treating providers and had normal abdominal examinations. *See* Tr. 2211–64 (reporting no abdominal pain, no vomiting, normal appetite, no weight loss or weight gain, no constipation, and no diarrhea; doctor noted "remissions" next to Plaintiff's past medical history of Crohn's disease). As a result, substantial evidence supports the ALJ's conclusion that Plaintiff's gastrointestinal issues did not have more than a minimal effect on Plaintiff's ability to perform basic work activities.

As for Plaintiff's remaining conditions—IBS, GERD, colitis, fibromyalgia, cervical cancer, uterine polyps, ovarian cysts, abnormal pap smears, and menorrhagia—Plaintiff failed to point to any evidence that those conditions have more than a minimal effect on Plaintiff's ability to work and that those conditions are expected to last at least twelve months as required to support a finding of disability. 42 U.S.C. § 423(d)(1)(A). The evidence in the record establishes that Plaintiff's cervical cancer, uterine polyps, ovarian cysts, abnormal pap smears, and menorrhagia were treated with surgery. Tr. 1231–32 (uterine polyp removal); Tr. 2207–08 (left ovary removal after a prior right ovary removal); Tr. 2209–10 (hysterectomy). Plaintiff pointed to no evidence that her pain or other symptoms of these conditions interfered with her ability to perform basic work activities after her surgeries or that they have lasted "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Plaintiff has not identified any examination in the record that establishes that Plaintiff's fibromyalgia has been diagnosed by any medically acceptable diagnostic techniques. The Court's review of the record suggests that Plaintiff's fibromyalgia diagnosis is based on her self-report, not on any medically acceptable physical examination and medical investigation of her symptoms. *See* SSR 12-2p, 2012 WL 3104869, at *2–3 (July 25, 2012) (explaining that the

Commissioner may find that a claimant has a medically determinable impairment of fibromyalgia if the claimant has a history of widespread pain, physical exam findings consistent with fibromyalgia, and evidence that other disorders that could cause the symptoms have been ruled out).

Additionally, Plaintiff has produced no evidence that her fibromyalgia would have more than a minimal impact on her ability to do basic work activities. In fact, Plaintiff testified that without the symptoms of her mental impairments and alleged Crohn's disease, her fibromyalgia would not keep her from working a light job. Tr. 2608–09. The ALJ's determination that fibromyalgia is not among Plaintiff's severe medically determinable impairments thus is supported by substantial evidence in the record.

When the ALJ neglects to include a severe impairment at step two, the error is harmless if the ALJ considers the claimant's functional limitations at steps four and five, including those caused by the omitted severe impairment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). As discussed above, the ALJ considered Plaintiff's testimony concerning the subjective symptoms of her impairments—including those omitted from her list of severe impairments—and rejected her testimony for legally sufficient reasons supported by substantial evidence. As a result, even if the ALJ erred by not including some of Plaintiff's severe impairments at step two, the error was harmless because the ALJ considered Plaintiff's testimony concerning the limiting effects of those impairments at steps four and five.

IV.    **Step Three Findings**

Plaintiff argues that the ALJ erred at step three by failing to find that Plaintiff's impairments met or equaled a listed impairment. Pl. Op. Br. 15. Specifically, Plaintiff argues that the ALJ erred by failing to analyze whether her fibromyalgia met or equaled Listing 14.09D and

by failing to conclude that Plaintiff's mental health conditions cause marked to extreme limitations despite her treatment. *Id.* Plaintiff also argues that her impairments meet or equal listings 12.04, 12.06, and 12.15, singly or in combination. *Id.* at 16.

At step three, the ALJ is tasked with determining whether one or more of a claimant's severe impairments "meets or equals" one of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). A claimant does not necessarily meet a listing simply because the claimant has been diagnosed with a listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). To qualify for benefits at step three by demonstrating that the claimant's impairment is medically equivalent to a listed impairment, the claimant's impairment must satisfy all the criteria of the one most similar listed impairment. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). "Listed impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). Plaintiff bears the burden of producing evidence to establish that she has an impairment that meets or equals a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (failure to consider equivalence was not reversible error because the claimant offered no theory as to how his impairments combined to equal a listing impairment); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

A.    Listing 14.09D

Plaintiff first argues that the ALJ erred at step three because he failed to consider whether she meets listing 14.09D. Because fibromyalgia (FM) is not a listed impairment, the ALJ must "determine whether FM medically equals a listing (for example, listing 14.09D in the listing for

inflammatory arthritis), or whether it medically equals a listing in combination with at least one

other medically determinable impairment." SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012).

> Listing-level severity in 14.09B, 14.09C2, and 14.09D is shown by inflammatory
> arthritis that involves various combinations of complications (such as inflammation
> or deformity, extra-articular features, repeated manifestations, and constitutional
> symptoms and signs) of one or more major joints in an upper or a lower extremity
> (see 14.00C8) or other joints. Extra-articular impairments may also meet listings in
> other body systems. . . . Extra-articular features of inflammatory arthritis may
> involve any body system[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.09(e)(ii). Although she requested that the ALJ

consider whether she is disabled under Listing 14.09D, Plaintiff offered no evidence that she

meets the requirements of Listing 14.09D. Plaintiff bears the burden "to demonstrate not only the

error, but also that it affected [her] 'substantial rights,' which is to say, not merely [her]

procedural rights." *Kennerson v. Colvin*, No. ED CV 14-01290-DFM, 2015 WL 3930167, at *2

(C.D. Cal. June 25, 2015) (rejecting the plaintiff's argument that the ALJ erred by failing to

consider whether the plaintiff's fibromyalgia met or equaled Listing 14.09D because the plaintiff

offered "nothing in the way of analysis that purports to compare her condition to that described

in Listing 14.09D") (citation omitted).

Even if it was error not to consider whether Plaintiff's fibromyalgia—not a medically

determinable impairment—met or equaled Listing 14.09D, Plaintiff has failed to demonstrate

that any error was not harmless because she offered no argument or evidence to establish that she

meets the criteria of the listing. More importantly, Plaintiff testified at the hearing that her

fibromyalgia was not severe enough to keep her from meeting the physical requirements of the

medical receptionist and waitress jobs she had held in the past. Tr. 2608–09. In addition, Plaintiff

worked with fibromyalgia before her alleged onset date, and the evidence in the record does not

demonstrate any worsening of her fibromyalgia after her alleged onset date. As a result, the

ALJ's conclusion that fibromyalgia is not a condition that prevents Plaintiff from doing all

gainful activity as required for a finding of disability at step three is supported by substantial evidence in the record.

B.      Listings 12.04, 12.06, and 12.15

Plaintiff argues that the ALJ failed to consider whether Plaintiff met the requirements for a finding of disability at step three under Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). To meet the requirements of those listed impairments, Plaintiff must establish that she meets the criteria of paragraphs A and B of the listings for those impairments or, alternatively, meets the requirements of paragraphs A and C. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2). "To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning," which are: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2)(b).

Plaintiff argues, without citation, that the improperly rejected opinions of Dr. Boyd and Mr. Davis and the medical evidence in the record establish that Plaintiff meets the requirements of paragraphs A, B, and C for each of the three identified mental impairments. Pl. Op. Br. 16. Because the ALJ improperly rejected the opinions of Dr. Boyd and Mr. Davis, the ALJ must re-evaluate their opinions and, if appropriate, consider the opinions at step three (and subsequent steps) when determining whether Plaintiff meets or equals a listed impairment.

V.      **Step Five Findings**

Plaintiff argues that the ALJ erred at step five by finding that she can perform jobs with a reasoning level of two. Pl. Op. Br. 19. That argument is based on Plaintiff's assertion that the

ALJ erred by failing to include the limitation to one- to two-step instructions and other limitations identified by Dr. Boyd and Mr. Davis in Plaintiff's RFC.[3] *Id.* Because the Court finds that the ALJ improperly rejected their opinions in formulating the RFC, the Court finds that the record must be developed to resolve the conflicts between opinions, formulate a new RFC, and determine whether jobs exist in the national economy which Plaintiff can perform within her RFC after consideration of the record as a whole.

## VI.    Remand for Benefits

Plaintiff cursorily argues that the Court should credit Plaintiff's testimony as true and remand for an immediate payment of benefits. Pl. Op. Br. 21. The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion

---

[3] Plaintiff also argues that the ALJ erred by finding that she can perform work as a laboratory equipment cleaner because her RFC restricts her to light work, and the laboratory equipment cleaner position is classified as a medium exertional level job. *Id.* at 20. The Commissioner agrees that Plaintiff's limitation to light work precludes her from performing the laboratory equipment cleaner position. Def. Br. 9, ECF 15.

to depart from the ordinary remand rule" of remanding to the agency.) (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988)). Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly when the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

The Court finds that the ordinary remand rule is the proper remedy in this case. Because the ALJ provided no legally sufficient reasons to reject Dr. Boyd and Mr. Davis's opinions, the record must be developed to resolve conflicts in the opinions, formulate a new RFC, and to determine whether Plaintiff is capable of performing jobs that exist in significant numbers in the national economy with the resulting limitations. Accordingly, the Court remands this case for further administrative proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings. Plaintiff's Motion For Leave to File Late [Reply] Brief [16] is denied as moot.

IT IS SO ORDERED.

DATED: _____August 4, 2021_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge